## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KELLY JANE RHODES**,

    Plaintiff,

v.                                   Case No:

**STATE OF MICHIGAN, MICHIGAN DEPARTMENT OF CORRECTIONS, JOHN DOE/JANE DOE QUARTERMASTER OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, SONAL PATEL, STEPHANIE JACKSON, SHONTEL BARNES, TONYA ALLEN, NORMAN LAUGHLIN, PAUL MCPHERSON, and RICHARD JONES**,
in their individual capacities.

    Defendants.

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>AMY J. DEROUIN (P70514)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, Michigan 48386<br>Tel: (248) 886-8650<br>Fax: (248) 698-3321<br>amy.derouin@cjtrainor.com | |

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff **KELLY RHODES**, by and through her attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and for her Complaint against the above-named Defendants, states the following:

## NATURE OF ACTION

1.     This is an action by a former prisoner for violations of her civil rights as secured by the United States and Michigan Constitutions.

## JURISDICTION AND VENUE

2.     Jurisdiction is proper pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

3.     Venue is proper pursuant to 28 U.S.C. §1391

## PARTIES

4.     Plaintiff Kelly Rhodes ("Plaintiff") was at all times relevant to this matter in the care, custody, control, and supervision of Defendants as she was housed at the Michigan Department of Corrections, Women's Huron Valley Correctional Facility (WHVCF), located in Pittsfield Township, County of Washtenaw, State of Michigan.

5.     Defendant Michigan Department of Corrections is a governmental subdivision organized under the laws of the State of Michigan and at all relevant times had custody, control, and supervisory authority over Plaintiff as well as had supervisory authority over the prisoner work program known as the Michigan State Industries ("MSI") Program in which Plaintiff was a participant at the time of the subject incident.

6.     Defendant JOHN/JANE DOE is and/or was the Quartermaster at WHVCF and was acting within the course and scope of his or her employment, under color of law, in his or her individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

7.     Defendant SONAL PATEL is and/or was the Warden at WHVCF and was acting within the course and scope of his employment, under color of law, in his individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular the Quartermaster personnel, at the time of the subject incident and participated in the formation of MSI Program

policies and/or customs and/or practices with the Michigan Department of Corrections, and in implementing same.

8.     Defendant STEPHANIE JACKSON is and/or was a Lieutenant at WHVCF and was acting within the course and scope of her employment, under color of law, in her individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

9.     Defendant SHONTEL BARNES is and/or was a Sergeant at WHVCF and was acting within the course and scope of her employment, under color of law, in her individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

10.     Defendant TONYA ALLEN is and/or was a Captain at WHVCF and was acting within the course and scope of her employment, under color of law, in her individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

11.     Defendant NORMAN LAUGHLIN is and/or was a corrections officer at WHVCF and was acting within the course and scope of his employment, under color of law, in his individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

12.     That for all allegations in this Complaint, Defendants Doe, Laughlin, Allen, Jackson, Patel and MDOC are referred to as supervisory/Quartermaster personnel responsible for supervising and training prison personnel hereinafter referred to as Quartermaster.

13.     Defendant PAUL MCPHERSON is and/or was a corrections officer at WHVCF and was acting within the course and scope of his employment, under color of law, in his individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

14.     Defendant RICHARD JONES is and/or was an E9 Equipment Operator of Regional MSI at WHVCF and was acting within the course and scope of his employment, under color of law, in his individual and official capacity, and had custody, control, and supervisory authority over Plaintiff at all relevant times alleged in this Complaint and, upon information and belief, supervised the MSI Program, in particular was responsible for supervising and training the Quartermaster personnel, at the time of the subject incident.

15.     Defendant STATE OF MICHIGAN was at all times relevant to this matter a government agency created under the laws of the State of Michigan.

## COMMON ALLEGATIONS

16.     Defendant State of Michigan, acting through its Department of Corrections Michigan State Industries (MSI), provides laundry services to government entities and 501(c)(3) organizations, among other goods and services.

17.    As part of MSI's laundry services, used linen's at the Women's Huron Valley Correctional Facility (WHVCF) are gathered as scheduled, placed into large institutional laundry carts, and then transported to a sally port area where they are loaded onto an MSI tractor-trailer and transported to a facility for laundering by MSI.

18.    Once laundered, MSI places the linens back into heavy institutional laundry carts and transports them back to the WHVCF for reuse.

19.    A corrections officer monitors prisoners who load and unload laundry carts onto and off of the MSI tractor-trailer.  The same corrections officer also operates a hydraulic lift gate, so the heavy institutional laundry carts may be loaded onto and unloaded from the MSI tractor-trailer in a safe and proper manner.

20.    Based upon information and belief, when filled with linens, an institutional laundry cart weights approximately 400 pounds, so the carts cannot be loaded onto or unloaded from MSI delivery trucks without the use of a hydraulic lift gate.

21.    On March 8, 2013, Plaintiff was placed in the care and custody of State of Michigan and assigned to the WHVCF.

22.    As part of her program classification, on or about October 2015, Plaintiff was assigned to work for the institutional Quartermaster and/or prison supervisors.

23.     As part of her program assignment working for the institutional Quartermaster, Plaintiff was responsible for loading onto MSI tractor-trailers heavy institutional laundry carts filled with used linens and for unloading heavy institutional laundry carts filled with clean linens from said MSI tractor-trailers.

24.     The day of the occurrence, October 15, 2015, was only the second day that Plaintiff had worked for the institutional Quartermaster, and Plaintiff was still being trained by another inmate.

25.     On this day at approximately 7:10 a.m., Defendant Jones drove an MSI delivery truck to the WHVCF to deliver clean lines to the institution.

26.     Defendant Jones positioned the MSI delivery truck for unloading and the back door of the delivery truck was raised.

27.     Plaintiff and two other quartermaster employees were present to unload clean linens from the MSI delivery truck.

28.     Defendant McPherson was the corrections officer, operating the lift gate and safety mechanisms on the lift gate.

29.     Defendant McPherson was the corrections officer responsible for monitoring the prisoners unloading laundry carts from the MSI tractor-trailer.

30.     Defendant McPherson was also responsible for operating the hydraulic lift gate so that the heavy institutional laundry carts could be unloaded from the MSI tractor-trailer in a safe and proper manner.

31.     After the back door of the MSI tractor-trailer was raised and during the unloading process, Defendant Jones pushed a heavy institutional laundry cart weighing hundreds of pounds with such force that the large industrial laundry cart rolled out of the truck, onto the lift gate, and off onto Plaintiff's head and neck area.

32.     The laundry cart, which weighed several hundred pounds, landed on top of Plaintiff, causing Plaintiff to fall to the ground and to strike her head against the cement pavement.

33.     Defendant McPherson radioed for assistance, other corrections officers to arrive at the scene and to summon institutional health care personnel as well as an ambulance from outside of the institution.

34.     Institutional health care personnel arrived at the scene, and Plaintiff was secured in leg irons while being transferred onto a stretcher for transportation to a hospital outside of the institution.

35.     An ambulance from Huron Valley Ambulance, Inc. subsequently arrived, and Plaintiff was transported to the emergency room at St. Joseph Mercy Ann Arbor for emergency trauma care.

36.     Plaintiff was diagnosed by licensed medical personnel as having suffered traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, and lacerations about Plaintiff's face and scalp.

37.     Plaintiff continues to suffer from miscellaneous residual injuries, including, but not limited to a traumatic brain injury, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision, nausea, physical injuries, and other medical complications proximately caused by Defendants' conduct.

38.     As a result of her physical injuries, Plaintiff further suffers associated physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

## CAUSES OF ACTION

### COUNT I:
### 8TH AMENDMENT
### CRUEL AND UNUSUAL PUNISHMENT

39.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

40.     All at times relevant to this action, Defendant [Quartermaster] acted under color of state law.

41.     Defendant [Quartermaster] was deliberately indifferent to Plaintiff's health or safety and thus deprived Plaintiff of rights secured by the Eighth Amendment to the United States Constitution when he:

    A. Failed to properly train Plaintiff regarding the hazardous activities

        she would be required to perform before allowing her to be present

in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailers, knowing of the substantial risk of serious harm that it posed to Plaintiff.

42.     All at times relevant to this action, Defendant McPherson acted under color of state law.

43.     Defendant McPherson was deliberately indifferent to Plaintiff's health or safety and thus deprived Plaintiff of rights secured by the Eighth Amendment to the United States Constitution when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before industrial laundry carts weighing hundreds of pounds were pushed out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant Jones regarding whether the hydraulic lift gate was properly positioned before Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

I. Failed to warn Plaintiff of the impending danger once Defendant Jones began pushing industrial laundry carts weighing hundreds of

pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

44. All at times relevant to this action, Defendant Jones acted under color of state law.

45. Defendant Jones was deliberately indifferent to Plaintiff's health or safety and thus deprived Plaintiff of rights secured by the Eighth Amendment to the United States Constitution when he:

    A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

    B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

    C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

- 14 -

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before pushing industrial laundry carts weighing hundreds of pounds were out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant McPherson regarding whether the hydraulic lift gate was properly positioned before pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

I.  Failed to warn Plaintiff of the impending danger once he began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

j.  Pushing an extremely dangerous cart out of the truck without first checking to see if it was safe.

46.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones failed to act despite each of them knowing of the substantial risk of serious harm posed to Plaintiff.

47.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones acted with deliberate indifference, exposing Plaintiff to a sufficiently substantial risk of serious damage to her future health.

48.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct served no valid penological purpose.

49.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision,

nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

**WHEREFORE,** Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

<u>**COUNT II:**</u>
<u>**14TH AMENDMENT**</u>
<u>**SUBSTANTIVE DUE PROCESS**</u>
<u>**DEPRIVATION OF FUNDAMENTAL**</u>
<u>**RIGHT TO BODILY INTEGRITY**</u>

50.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

**A.    <u>Defendant [Quartermaster]</u>**

51.     All at times relevant to this action, Defendant [Quartermaster] acted under color of state law.

52.     Despite having time to fully consider the potential consequences of his conduct, Defendant [Quartermaster] knew of and acted with deliberate indifference regarding excessive risks to Plaintiff's health or safety when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present

in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailers, knowing of the substantial risk of serious harm that it posed to Plaintiff.

**B.**   **Defendant McPherson**

53.   All at times relevant to this action, Defendant McPherson acted under color of state law.

54.   Despite having time to fully consider the potential consequences of his conduct, Defendant McPherson knew of and acted with deliberate indifference regarding excessive risks to Plaintiff's health or safety when he:

     A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

     B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

     C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

- 19 -

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before industrial laundry carts weighing hundreds of pounds were pushed out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant Jones regarding whether the hydraulic lift gate was properly positioned before Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

I. Failed to warn Plaintiff of the impending danger once Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff.

### C.   **Defendant Jones**

55.   All at times relevant to this action, Defendant Jones acted under color of state law.

56.   Despite having time to fully consider the potential consequences of his conduct, Defendant Jones knew of and acted with deliberate indifference regarding excessive risks to Plaintiff's health or safety when he:

A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before pushing industrial laundry carts weighing hundreds of pounds were out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant McPherson regarding whether the hydraulic lift gate was properly positioned before pushing industrial laundry carts weighing hundreds of pounds out of

the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

I.   Failed to warn Plaintiff of the impending danger once he began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff.

57.   Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct deprived Plaintiff of her fundamental right to bodily integrity.

58.   Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision, nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

**WHEREFORE,** Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

## COUNT III:
## 8TH AMENDMENT
## FAILURE TO PROTECT

59.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

**A.     Defendant [Quartermaster]**

60.     All at times relevant to this action, Defendant [Quartermaster] acted under color of state law.

61.     Despite having time to fully consider the potential consequences of his conduct, Defendant [Quartermaster] created or increased the risk of harm to Plaintiff when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

> B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailers, knowing of the substantial risk of serious harm that it posed to Plaintiff.

**B.** **Defendant McPherson**

62. All at times relevant to this action, Defendant McPherson acted under color of state law.

63. Despite having time to fully consider the potential consequences of his conduct, Defendant McPherson created or increased the risk of harm to Plaintiff when he:

A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F.  Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G.  Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before industrial laundry carts weighing hundreds of pounds were pushed out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H.  Failed to communicate with Defendant Jones regarding whether the hydraulic lift gate was properly positioned before Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

I.  Failed to warn Plaintiff of the impending danger once Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

J.  Failed to ascertain that he could push the heavy industrial laundry cart out of the MSI tractor-trailer without posing a risk of harm to Plaintiff before engaging in such conduct.

### C. **Defendant Jones**

64.    All at times relevant to this action, Defendant Jones acted under color of state law.

65.    Despite having time to fully consider the potential consequences of his conduct, Defendant Jones created or increased the risk of harm to Plaintiff when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform and appropriate safety protocols that she should employ before allowing Plaintiff to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

> B. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform and appropriate safety protocols that she should employ before allowing Plaintiff to perform said duties, knowing of the substantial risk of serious harm that it posed to Plaintiff;

> C. Allowed other inmates to train Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to adequately supervise the unloading of heavy industrial laundry carts from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before pushing heavy industrial laundry carts out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to communicate with Defendant McPherson regarding whether the hydraulic lift gate was properly positioned before pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

G. Failed to warn Plaintiff of the impending danger once he began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff.

66.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones were state actors responsible for Plaintiff's care and custody.

67.    By virtue of this custodial relationship, a special relationship existed between Plaintiff and Defendants and Defendants had a legal duty to protect Plaintiff.

5.    When Defendant [Quartermaster], Defendant McPherson, and Defendant Jones acted or failed to act, they each had an opportunity for reflection and unhurried judgment.

69.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones knew or reasonably should have known of the inherent risk involved in their actions.

70.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones were aware of these facts from which an inference could be drawn that a substantial risk of serious harm existed when the heavy industrial laundry carts weighing hundreds of pounds were unloaded from the MSI tractor-trailer;

71.    The risk inherent in such conduct was so obvious that Defendant [Quartermaster], Defendant McPherson, and Defendant Jones had to have known about it.

72.    Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell,

loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision, nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

**COUNT IV:**
**14TH AMENDMENT**
**SUBSTANTIVE DUE PROCESS**
**STATE-CREATED DANGER**

73.    Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

**A.    Defendant [Quartermaster]**

74.    All at times relevant to this action, Defendant [Quartermaster] acted under color of state law.

75.    Despite having time to fully consider the potential consequences of his conduct, Defendant [Quartermaster] created or increased the risk of harm to Plaintiff when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present

in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailers, knowing of the substantial risk of serious harm that it posed to Plaintiff.

## B. __Defendant McPherson__

76.   All at times relevant to this action, Defendant McPherson acted under color of state law.

776.   Despite having time to fully consider the potential consequences of his conduct, Defendant McPherson created or increased the risk of harm to Plaintiff when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before industrial laundry carts weighing hundreds of pounds were pushed out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant Jones regarding whether the hydraulic lift gate was properly positioned before Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

I. Failed to warn Plaintiff of the impending danger once Defendant Jones began pushing industrial laundry carts weighing hundreds of

pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

J.  Failed to ascertain that he could push the heavy industrial laundry cart out of the MSI tractor-trailer without posing a risk of harm to Plaintiff before engaging in such conduct.

### C.  **Defendant Jones**

78.   All at times relevant to this action, Defendant Jones acted under color of state law.

79.   Despite having time to fully consider the potential consequences of his conduct, Defendant Jones created or increased the risk of harm to Plaintiff when he:

A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform and appropriate safety protocols that she should employ before allowing Plaintiff to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform and appropriate safety protocols that she should employ before allowing Plaintiff to perform said

duties, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Allowed other inmates to train Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to adequately supervise the unloading of heavy industrial laundry carts from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before pushing heavy industrial laundry carts out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to communicate with Defendant McPherson regarding whether the hydraulic lift gate was properly positioned before pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

G. Failed to warn Plaintiff of the impending danger once he began pushing industrial laundry carts weighing hundreds of pounds out of

the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff.

80.     Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' affirmative acts created or increased the risk of harm to Plaintiff.

81.     Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' affirmative acts posed a special danger to Plaintiff as distinguished from the public at large.

82.     Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' affirmative acts rendered Plaintiff more vulnerable to danger.

83.     Plaintiff individual was safer before Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' undertook their affirmative acts than she was said acts.

84.     Defendant [Quartermaster], Defendant McPherson, and Defendant Jones knew or should have known that their actions, individually or collectively, specifically endangered Plaintiff.

85.     Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision,

nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

### COUNT V:
### GROSS NEGLIGENCE

86.     Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

**A.     Defendant [Quartermaster]**

87.     Defendant [Quartermaster] had knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to Plaintiff.

88.     Defendant [Quartermaster] had the ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

89.     Defendant [Quartermaster] failed to such care and diligence to avert the threatened danger when to the ordinary mind it was apparent that the result was likely to prove disastrous to another when he:

A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present

in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailers, knowing of the substantial risk of serious harm that it posed to Plaintiff.

**B.**    **Defendant McPherson**

90.    Defendant McPherson had knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to Plaintiff.

91.    Defendant McPherson had the ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

92.    Defendant McPherson failed to such care and diligence to avert the threatened danger when to the ordinary mind it was apparent that the result was likely to prove disastrous to another when he:

> A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;
>
> C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were

being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before industrial laundry carts weighing hundreds of pounds were pushed out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant Jones regarding whether the hydraulic lift gate was properly positioned before Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

I.  Failed to warn Plaintiff of the impending danger once Defendant Jones began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

J.  Failed to ascertain that he could push the heavy industrial laundry cart out of the MSI tractor-trailer without posing a risk of harm to Plaintiff before engaging in such conduct.

## C.  **Defendant Jones**

93.    Defendant Jones had knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to Plaintiff.

94.    Defendant Jones had the ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

95.    Defendant Jones failed to such care and diligence to avert the threatened danger when to the ordinary mind it was apparent that the result was likely to prove disastrous to another when he:

A. Failed to properly train Plaintiff regarding the hazardous activities she would be required to perform before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

B. Failed to properly train Plaintiff regarding the hazards associated with Plaintiff's job duties before allowing Plaintiff to perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

C. Failed to properly train Plaintiff before allowing her to be present in a hazardous work environment where said hazardous activities were being performed, knowing of the substantial risk of serious harm that it posed to Plaintiff;

D. Failed to properly train Plaintiff before allowing her perform hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

E. Allowed other inmates to train Plaintiff regarding hazardous work activities, knowing of the substantial risk of serious harm that it posed to Plaintiff;

F. Failed to properly supervise the unloading of industrial laundry carts weighing hundreds of pounds from the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

G. Failed to ensure that the hydraulic lift gate was properly operated and/or positioned before pushing industrial laundry carts weighing

hundreds of pounds were out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff;

H. Failed to communicate with Defendant McPherson regarding whether the hydraulic lift gate was properly positioned before pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff; and

I. Failed to warn Plaintiff of the impending danger once he began pushing industrial laundry carts weighing hundreds of pounds out of the MSI tractor-trailer, knowing of the substantial risk of serious harm that it posed to Plaintiff.

96. Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

97. Defendant [Quartermaster], Defendant McPherson, and Defendant Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision,

nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

**COUNT VI:**
**NEGLIGENT OPERATION OF**
**GOVERNMENT-OWNED VEHICLE MCL 691.1405**

98.   Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

99.   Defendants State of Michigan and Defendant MDOC was at all times relevant to this matter a government agency created under the laws of the State of Michigan.

100.   Defendant State of Michigan and/or MDOC owned the MSI tractor-trailer, which was a motor vehicle as that term is defined by Michigan law.

101.   Defendants McPherson and Jones were at all times relevant to this matter officers, agents, and/or employees of Defendant State of Michigan.

102.   Defendants McPherson and Jones operated the MSI tractor-trailer as a motor vehicle.

103.   Defendants McPherson and Jones operated the MSI tractor-trailer in a negligent manner.

104.   Defendants State of Michigan and MDOC are generally immune from liability.

105.   Defendants McPherson and Jones' negligent operation of the MSI tractor-trailer proximately caused Plaintiff serious impairment of body function and permanent serious disfigurement in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision, nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

## COUNT VI:
## VIOLATION OF MICHIGAN NO-FAULT ACT AS TO DEFENDANTS STATE OF MICHIGAN AND MICHIGAN DEPARTMENT OF CORRECTIONS

106. Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

107. On October 15, 2015, Plaintiff was involved in an incident involving the maintenance, ownership, operation, and/or use of a motor vehicle.

108. That on the above date, Plaintiff was not covered by a policy of no – fault insurance, and she was not domiciled with a relative who was covered by a policy of no – fault insurance.

109. Pursuant to the Michigan No-Fault Act, Defendants State of Michigan and Michigan Department of Corrections are responsible.

110. By reason of the incident, Plaintiff sustained injuries which required medical treatment, rehabilitation treatment, nursing/attendant care, household replacement services, prescription items and medical appliance, wage loss benefits, and other benefits under said policy, and Plaintiff remains so disabled and unable to perform her normal duties and normal functions in a manner that she could prior to the incident.

111. Under the terms of the No-Fault Act, it became obligation by Defendants, to pay all the necessary medical and hospital expenses, including prescriptions and medical appliance and reimburse the Plaintiff for all loss of wages less fifteen (15%) percent and to and to make payment for personal services and household services rendered on behalf of the Plaintiff, and to pay any attendant/nursing care for the benefit of Plaintiff and to pay for all other medical rehabilitation expenses incurred as a result of the collision.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

### COUNT VIII:
### BATTERY

112.   Plaintiff incorporates all of the foregoing allegations as if fully restated herein.

113.   Defendants McPherson and Jones' conduct caused a willful, harmful, or offensive touching of Plaintiff with a fully-loaded industrial laundry cart weighing several hundred pounds.

114.   Defendants McPherson and Jones' conduct proximately caused Plaintiff's damages in the form of traumatic brain injury, a fractured skull, internal cranial bleeding, fractured nasal bones, lacerations about Plaintiff's face and scalp, loss of short-term memory, loss of smell, loss of hearing, migraine headaches, nystagmus, dizziness, vertigo, double vision, nausea, physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyments, and embarrassment, humiliation or mortification.

WHEREFORE, Plaintiff respectfully requests an award of damages to be determined by a jury, including but not limited to special, punitive, and consequential damages, all costs and fees associated with this action, including reasonable attorney's fees, and any other relief to which Plaintiff may be entitled.

Respectfully submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

BY:   **s/Christopher J. Trainor**
      CHRISTOPHER J. TRAINOR (P42449)
      AMY J. DEROUIN (P70514)
      Attorneys for Plaintiff
      9750 Highland Road
      White Lake, Michigan 48386
      (248) 886-8650
      shanna.suver@cjtrainor.com

Dated: July 19, 2017
CJT

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KELLY JANE RHODES**,

      Plaintiff,

v.                                            Case No:

**STATE OF MICHIGAN, MICHIGAN DEPARTMENT OF CORRECTIONS, JOHN DOE/JANE DOE QUARTERMASTER OF WOMEN'S HURON VALLEY CORRECTIONAL FACILITY, SONAL PATEL, STEPHANIE JACKSON, SHONTEL BARNES, TONYA ALLEN, NORMAN LAUGHLIN, PAUL MCPHERSON**, **and RICHARD JONES**,
in their individual capacities.

      Defendants.

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>AMY J. DEROUIN (P70514)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, Michigan 48386<br>Tel: (248) 886-8650<br>Fax: (248) 698-3321<br>amy.derouin@cjtrainor.com | |

<u>**DEMAND FOR TRIAL BY JURY**</u>

**NOW COMES** Plaintiff, **KELLY RHODES**, by and through her attorneys,

CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a Demand for

Trial by Jury in the above-entitled cause.

> Respectfully submitted,
> CHRISTOPHER TRAINOR & ASSOCIATES
>
> BY:   **s/Christopher J. Trainor**
>         CHRISTOPHER J. TRAINOR (P42449)
>         AMY J. DEROUIN (P70514)
>         Attorneys for Plaintiff
>         9750 Highland Road
>         White Lake, Michigan 48386
>         (248) 886-8650
>         shanna.suver@cjtrainor.com

Dated: July 19, 2017
CJT